UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ANTOINETTE MODICA,

                                 Appellant,

    -against-

OZONE PARK FUNDING ASSOCIATES,

                                 Appellee.
------------------------------------------------------------x

**MEMORANDUM & ORDER**

10-CV-1191 (ENV)

**VITALIANO, D.J.**

      Appellee Ozone Park Funding Associates ("Ozone Park") acquired a first mortgage lien on property located at 106-02, 04, 06 & 08 109th Avenue, Ozone Park, New York (the "property") arising out of a loan transaction between Ozone Park as lender and Anthony Modica as borrower. The loan was guaranteed by appellant, Antoinette Modica, the spouse of the borrower, but not a co-owner of the property. After loan default, resulting in the entry of a judgment of foreclosure, appellant filed a Chapter 13 petition in the Eastern District Bankruptcy Court on May 7, 2009. A hearing was held and on October 15, 2009, the bankruptcy court dismissed appellant's Chapter 13 case, lifting the automatic stay. On October 22, 2009, Anthony Modica filed his own petition for Chapter 13 relief in the same court, thereby again invoking the automatic stay accorded bankruptcy filers. After a hearing, by order dated December 29, 2009, United States Bankruptcy Judge Jerome Feller dismissed appellant's husband's case, including in the dismissal order a provision which ordered that if appellant or her husband filed another bankruptcy petition within two years of the date of the order, the automatic stay would not take effect as to the debt owed to Ozone Park by Anthony Modica or the property which had secured the mortgage. This appeal followed.

1

# I. BACKGROUND

Anthony Modica entered into a mortgage loan transaction with Ozone Park Funding Associates to purchase commercial real estate located at 106-02, 04, 06 & 08 109th Avenue, Ozone Park, New York. Appellant agreed to be a guarantor of the loan, but was neither a co-owner of the property nor did she reside in one of the property's residential apartments. Anthony Modica later defaulted on his loan payments, resulting, on February 17, 2009, in Ozone Park obtaining a judgment of foreclosure in the amount of $1,347,594.44 (as of December 31, 2008).

A foreclosure sale was scheduled and shortly thereafter, on May 7, 2009, appellant filed an individual Chapter 13 case, which was followed by her representation to the judicial official designated to conduct the sale that her personal bankruptcy filing triggered the automatic stay enjoining it. The judicial official adjourned the sale out of caution. On May 20, 2009, Ozone Park filed a motion to vacate the automatic stay since appellant had neither an ownership nor possessory interest in the property. Bankruptcy Judge Feller conducted a hearing and, on July 14, 2009, found that, since appellant had no ownership interest in the property, her Chapter 13 filing did not activate the automatic stay with respect to it. However, to avoid confusion, the court granted Ozone Park's motion and lifted the putative stay to permit the then-pending foreclosure to go forward. The court was careful to note that the granted relief was limited, observing that the stay was being lifted solely with regard to the property and not to any deficiency that appellant might be responsible for, given her status as a guarantor of the loan. Appellant's Chapter 13 case was subsequently dismissed on October 15, 2009 by motion of the Trustee.

Immediately after the stay was lifted, Ozone Park diligently resumed its efforts to conduct a foreclosure sale. Then, at 8:38pm on October 22, 2009, the evening before the new

sale was scheduled to be held, Anthony Modica filed a Chapter 13 petition, thereby invoking the automatic stay again. Ozone Park filed a motion seeking dismissal of his case, or, in the alternative, relief from the automatic stay to the extent it stalled the pending foreclosure proceedings. After conducting a hearing on the motion, on December 29, 2009, Judge Feller granted Ozone Park's motion and dismissed the case pursuant to 11 U.S.C. §§ 1307(c), 109(e), and for having been filed in bad faith. The court also ordered, pursuant to its power under 11 U.S.C. § 105, that in the event that any future bankruptcy petition was filed by either Anthony Modica or appellant within two years of the date of the order, the automatic stay would not take effect as to the property or the debt owed to Ozone Park that it secured. It is this order from which appellant appeals.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Bankruptcy Procedure 8013, this Court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." See Fed. R. Bank. P. 8013. The bankruptcy court's findings of fact will not be disturbed unless clearly erroneous. See id. ("Findings of fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."); Brunner v. N.Y. State Higher Educ. Svcs. Corp., 831 F.2d 395, 396 (2d Cir. 1987) (per curiam). The Court reviews the bankruptcy court's conclusions of law de novo. See Brunner, 831 F.2d at 396.

Bankruptcy judges have wide discretion in making determinations regarding an automatic stay. In re Boodrow, 126 F.3d. 43, 47 (2d. Cir. 1997). Since the ultimate disposition of a motion relating to a stay "depends upon the facts underlying a given motion," In re Bogdanovich, 292

F.3d 104, 110 (2d Cir. 2002), a decision by a bankruptcy court granting or denying a motion to lift an automatic stay is reviewed for abuse of discretion. In re Sonnax Indus., 907 F.2d 1280, 1286 (2d Cir. 1990). A bankruptcy court abuses its discretion when its decision is based either on an erroneous view of the law or by making clearly erroneous factual findings. Sears, Roebuck & Co. v. Spivey, 265 B.R. 357, 364 (E.D.N.Y. 2001) (internal citation omitted).

### III. DISCUSSION

Appellant argues that (1) the bankruptcy court's ruling regarding any future filings violated her due process rights because she was not a party to the action in which the order was entered; and (2) the bankruptcy court had no personal or in rem jurisdiction over her and thus could not grant any relief against her. But, what appellant ignores is that the bankruptcy court has the inherent power to "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a).

Section 105(a) of the Bankruptcy Code empowers a bankruptcy court with authority to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). It is true, nonetheless, that the Second Circuit has "long recognized that section 105(a) limits the bankruptcy court's equitable powers, which must and can only be exercised within the confines of the Bankruptcy Code." In re Kalikow, 602 F.3d 82, 96 (2d Cir. 2010) (internal quotations and citations omitted). While a bankruptcy court has wide discretion to fashion equitable relief, section 105 "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." Id. at 96-97. Given these boundaries and

the dictates of due process, it is still clear that the bankruptcy court's order aggrieving appellant was well within the confines of the Code and an appropriate form of relief in the instant circumstances.

First of all, "where a debtor abuses the bankruptcy process by filing a petition to obtain the benefit of the automatic stay, the court may dismiss the case and limit the effect of the automatic stay in any future case, subject to the debtor's (or trustee's) right to seek to reimpose the stay upon appropriate notice." In re Greenberg, 200 B.R. 763, 770 (Bankr. S.D.N.Y. 1996) (citing In re Kizelnik, 190 B.R. 171, 184 (Bankr. S.D.N.Y. 1995) (Where the case was filed solely for the purpose of blocking the creditor's foreclosure sale, "any further filing under the Bankruptcy Code by any person claiming an interest in the [property]" would not trigger the automatic stay regarding the creditor's right to foreclose.)). See also In re Wong, 30 B.R. 87, 88-89 (Bankr. C.D. Cal. 1983) ("[I]t was an abuse of the Bankruptcy Code for a debtor to file a Chapter 13 on the eve of foreclosure after her husband had exhausted all avenues in Bankruptcy Court and State Court. . . . [The] relief from the automatic stay also applies as to any Chapter 13 proceedings, filed subsequent or prior to the instant Chapter 13 proceeding, and which involve the subject property and the plaintiff herein and/or plaintiff's assignees or successors in interest . . . ."). In a nutshell, once it has considered and determined a creditor's claim in a specific property or debt, the bankruptcy court, consonant with due process, can insulate its determination from savaging by the Code's automatic stay provisions, regardless who commences the subsequent bankruptcy case.

Bankruptcy courts have, in fact, fashioned relief very similar to that ordered by Judge Feller in this case. In Kizelnik, for example, the bankruptcy court was adjudicating a Chapter 13 petition filed by a tenant who did not have an ownership interest in a mortgaged property facing

foreclosure sale. 190 B.R. at 173. The mortgage lender there was effectively in the same position Ozone Park was in here. Id. The owners of the property had filed motions and Chapter 13 petitions, sometimes on the eve of the scheduled sales, all of which were eventually denied or dismissed by the bankruptcy court. Id. In the end, four planned foreclosure sales were aborted. Id. at 173-74. After the owner's second Chapter 13 petition was dismissed for bad faith, the debtor's granddaughter, who was the tenant of the property, filed a Chapter 13 petition of her own, attempting to stop the sale. Id. The bankruptcy court summarily dismissed her case because her filings showed that she did not have any interest in the mortgaged property and that she was otherwise ineligible for Chapter 13 relief. Id. at 184. Critically, the dismissal order, as did Judge Feller's order, limited application of the automatic stay by barring its use to affect the mortgaged property in future cases. The bankruptcy judge found that the "case was filed solely for the purpose of blocking [the creditor's] fourth foreclosure sale" and ordered that "any further filing under the Bankruptcy Code *by any person* claiming an interest in the [property] will not operate as an automatic stay on [the creditor's] right to foreclose in the absence of a further order by this Court on notice to [the creditor]." Id. (emphasis added). Indeed, the reach of the subject order entered by Judge Feller is shorter than that of the order in Kizelnik.

In re Felberman also addressed the issue of multiple bankruptcy filings by family members attempting to energize the automatic stay to prevent an impending foreclosure. 196 B.R. 678 (Bankr. S.D.N.Y. 1995). There, after a judgment of foreclosure was entered against a husband and wife, the husband filed multiple Chapter 13 petitions, often on the day before the scheduled foreclosure sales. Id. at 680-81. When his third case was dismissed, the bankruptcy judge entered an order nullifying the automatic stay in the event of "any future filing by the debtor, or *any other person or entity* with an interest in the subject property . . . ." Id. at 679

6

(emphasis added). The wife then filed a Chapter 13 petition of her own, and after the foreclosure sale was finally consummated, sought unsuccessfully to vacate it on the ground that the order could not have validly bound her as a nonparty to the proceeding and, therefore, the sale violated the Code's automatic stay. See also In re Keefer, 04-CV-30304, 2005 Bankr. LEXIS 2149, at *23 (Bankr. S.D.N.Y. Feb. 10, 2005) (barring application of automatic stay to subject property in future bankruptcy case filed by "any person" claiming an interest in that property).

The common thread in these cases is the well-engrained understanding that the bankruptcy court can limit the effect of the automatic stay provisions of the Code in hypothetical future cases with respect to a debt or property that had already been subject to bankruptcy jurisdiction. That is precisely what Judge Feller has done here in simply limiting the automatic stay provision but only insofar as the Modicas seek to apply it to the real property that secured the mortgage debt owed to Ozone Park. Case law certainly supports the entry of such an order; in fact, it supports an order of even greater breadth to cover a universe of persons (known or unknown) who may file a bankruptcy case claiming an interest in the secured property. Though, given familiarity with both Modica bankruptcies, it may have been neater to have given appellant specific notice of Ozone Park's motion, due process was not offended by the entry of Judge Feller's limited order in the absence of such notice.

On that point, which is at the crux of the appeal, it should be emphasized that Judge Feller's order does not prevent appellant, or her husband for that matter, from filing another bankruptcy case at anytime in the future.[1] The order dealt only with the availability of the automatic stay, a procedural remedy.

> The practical consequence of such an order is to shift the burden of
> proof from the creditor to the debtor. With such orders, the debtor

---

[1] In fact, appellant proved this point herself by filing a new Chapter 13 case on February 5, 2010. The case has since been dismissed.

> will not be able to rely on the automatic imposition of the stay to impose the burden on the creditor to show why the stay should be lifted. Instead, upon a filing that follows an order containing prospective relief, the burden falls on the debtor to seek a temporary injunction and a restraining order along with his new petition in order to prevent a scheduled foreclosure sale.

In re Hamer, 00-CV-1180, 2000 U.S. Dist. LEXIS 12341, at *23-*24 (E.D. Pa. Aug. 17, 2000). In that manner, Judge Feller's order merely limits in a very circumscribed way the applicability of any automatic stay that would be launched if appellant filed a subsequent bankruptcy case. Specifically, the automatic stay would still afford appellant protection with respect to any debt other than that owed by Anthony Modica to Ozone Park on the mortgage. Additionally and dispositively, even regarding the debt to Ozone Park contingently owed by appellant, relief in the form of a stay affecting the property directly, if warranted, would still be available but only upon application beforehand. See, e.g., In re Abdul-Hasan, 104 B.R. 263, 267 (Bankr. C.D. Cal. 1989); Felberman, 196 B.R. at 683. Judge Feller's order is aimed in laser-like fashion to end the persistent attempts by the Modicas to prevent Ozone Park, through invocation of the bankruptcy stay, from conducting a valid foreclosure sale. Appellant's right to due process is plainly vindicated by the continued availability of the very same stay, now stripped of its automatic nature and requiring there be judicial intervention beforehand.

Lastly and centrally, it is important to underscore that the record establishes that the order below was not entered without a solid factual basis, for it was abundantly clear to the bankruptcy court that "both Antoinette Modica's Chapter 13 filing and Anthony Modica's Chapter 13 filing were filed in bad faith and evidence[d] a misuse of the bankruptcy process." (Transcript of Hearing on Motion to Vacate Automatic Stay or Alternative Motion to Dismiss Case, at 12). The record showed that appellant and her husband were both ineligible for Chapter 13 relief and

had filed frivolous petitions "invoking [the] automatic stay without any apparent intention of pursuing Chapter 13 cases." Id. Pointedly, appellant filed her Chapter 13 petition and claimed sanctuary through the automatic stay even though she had no ownership interest in the property whatsoever. Ozone Park suffered direct harm as a result. Her husband followed suit, as Judge Feller found, with a bad faith filing of his own on the very eve of the sale. Such conduct has been rightly found to be an abuse of bankruptcy process. See In re Ouverson, 79 B.R. 830, 832 (Bankr. N.D. Iowa) ("[R]epetitious filings for the purpose of invoking the automatic stay and delaying secured creditors is an abuse of the bankruptcy process."); In re Kinney, 51 B.R. 840, 844-45 (Bankr. C.D.Cal. 1985) ("While a debtor may lawfully avail himself of the protections of the automatic stay of 11 U.S.C. § 362, he is barred from filing bankruptcy petitions for the predominant purpose of reimposing the automatic stay after a motion for relief from automatic stay has been granted in a prior case between the parties. To allow the mortgagee to manipulate the judicial process through needless delays of the foreclosure is a fraud on creditors.").

The short of it is that the order of Judge Feller from which appeal is taken was well within the power of the bankruptcy court to grant and there is a solid factual foundation in the record and the bankruptcy case filings of both Antoinette and Anthony Modica to support it. The Court certainly can find no abuse of discretion or that the order was "based either on an erroneous view of the law" or "clearly erroneous factual findings." Sears, Roebuck, 265 B.R. at 364.

## IV. CONCLUSION

For the reasons set forth above, the Decision and Order of the bankruptcy court is AFFIRMED.

The Clerk is directed to close this case.

**SO ORDERED.**

Dated: Brooklyn, New York
December 6, 2010

　　　　　　　　　　　　　　　　　　　　　　ERIC N. VITALIANO
　　　　　　　　　　　　　　　　　　　　　　United States District Judge